

_____

Honorable Linda B. Riegle
United States Bankruptcy Judge

**Entered on Docket**
**October 03, 2013**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

DENNIS A GAZSO,
SHELLE K LEFEVER,

Debtor.

Case No. BK-S-12-12224 LBR
Chapter 7

**ORDER GRANTING:**

*TRUSTEE'S MOTION TO SELL FREE AND CLEAR OF LIENS AND ENCUMBRANCES OR, IN THE ALTERNATIVE, MOTION TO SELL SUBJECT TO ANY AND ALL LIENS AND ENCUMBRANCES – REAL PROPERTY*

**[2513 SIERRA SAGE STREET, LAS VEGAS, NV 89134]**

Hearing Held: September 26, 2013 at 11:00 a.m.

### <u>ORDER GRANTING</u>

<u>*MOTION TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND TO SURCHARGE PROCEEDS OF SALE - REAL PROPERTY*
**[2513 Sierra Sage Street, Las Vegas, NV 89134]**</u>

On the date and at the time set forth above, a hearing was held before the Honorable Linda B. Riegle, Bankruptcy Court Judge, District of Nevada, in the above-captioned chapter 7 case of Dennis Gazso and Shelle Lefever ("Debtor") upon the "*Trustee's Motion To Sell Free And Clear Of Liens And Encumbrances Or, In The Alternative, Motion To Sell Subject To Any And All Liens And Encumbrances – Real Property, located at 2513 Sierra Sage Street, Las Vegas, NV 89134*" ("Motion") filed by David Rosenberg ("Trustee"). There appearing no opposition as set forth in the recorded transcript of the hearing on the Motion and having given due consideration to the Motion, the declarations, and other evidence submitted in support of the Motion, and for other good cause shown, the Court hereby finds, as a matter of fact, and concludes, as a matter of law, that:

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 to approve the sale of the property located at **2513 SIERRA SAGE STREET, LAS VEGAS, NV 89134** ("Property") which is the subject of the Motion free and clear of those liens, encumbrances, claims and interests identified in this order ("Order"), and to authorize the Trustee on behalf of the estate in the above-captioned case ("Estate") to enter into and perform in accordance with the Residential Purchase Agreement and HUD-1 (together, the "Agreement") dated April 30, 2013, including the modifications thereto, if any, set forth in the record of the hearing on the Motion. The Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). The statutory predicates for the relief requested in the Motion are 11 U.S.C. §§ 105 and 363, and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 6004 and 9014.

2.      All objections, if any, to the Motion and to the approval of the Agreement, including the transactions contemplated thereby, have been withdrawn, resolved or overruled.

3.      The Property is situated in the County of Clark, State of Nevada,

**LOT 313 IN BLOCK 10 OF SUN CITY LAS VEGAS – UNIT 44, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 62 OF PLATS, PAGE 99, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**

4.      Record title to the Property is vested in the Debtor ("Record Owner").

5.      As set forth in the declarations of service filed with this Court in connection with the Motion, notice of the hearing on the approval of the Motion ("Notice") was duly served on (a) the Debtor and Debtor's counsel, (b) all creditors and interested parties, (c) each entity known to the Trustee to assert a lien, encumbrance or other interest in, or claim to, the Property to be affected by this Order, and (d) the Office of the United States Trustee, all in accordance with Bankruptcy Rules 2002(a)(2), 2002(c)(I), 2002(i), 2002(k), 6004(a) and 6004(c). Each entity known to the Trustee to assert a lien, encumbrance, claim or other interest in or to the Property to be affected by this Order was also served with a complete copy of the Motion, and all supporting declarations and pleadings filed by the Trustee in connection with the Motion.

6.      The Notice complied in all respects with the requirements of the Bankruptcy Code and the Bankruptcy Rules; fully and adequately described the relief requested in the Motion and set forth the means by which the Motion, and all supporting declarations and pleadings filed by the Trustee in connection with the Motion, could be obtained promptly by a party in interest; provided fair and reasonable notice under the circumstances of this case with respect to the

deadlines and procedures for objecting to the relief requested in the Motion; and set forth the time, date and place for the hearing on the Motion. The Court believes that such notice was sufficient to allow any interested parties the opportunity weigh in on the Motion and participate in the sale hearing.  As such, the Court finds adequate notice of the sale has, under the particular circumstances of the case, been given.

7.     The Property is allegedly subject to the liens, encumbrances and other interests of record as set forth in a preliminary report/title commitment ("Title Report"), attached hereto as Exhibit "A", including, without limitation, the following:

**A deed of trust for $175,920 in favor of Mortgage Electronic Registration Systems Inc., solely as nominee for Lehman Brothers Bank, FSB a federal savings bank, dated December 19, 2006, and recorded on December 22, 2006, in Book 20061222, Document No. 0004369, of Official Records.**

8.     Based on the moving papers, the Trustee has satisfied the requirements for a sale free and clear of all liens and interests (including, but not limited to, those liens listed above in ¶7) pursuant to § 363(f)(2) and § 363(f)(5).

9.     The Trustee has engaged in fair and reasonable marketing, advertising and other sale efforts and procedures in connection with the sale of the Property, which efforts and procedures have enabled the Estate to obtain a fair and reasonable price for the Property under the circumstances of this case. In connection with the proposed sale, the Trustee has complied with all sale procedures established or required by this Court.

10.     The highest and best offer to purchase the Property was the one received from Sharon L. Blanks ("Buyer") to buy the Property for a purchase price of $125,000 ("Purchase Price") on the terms and conditions set forth in the Agreement.

11.     The Buyer is unrelated to the Debtor and the Trustee.  The Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee nor the Buyer have engaged in any conduct that would cause or permit the Agreement, or the transactions contemplated thereby, to be invalidated or avoided under 11 U.S.C. § 363(n). Accordingly, upon consummation of the sale transaction contemplated by the Agreement, the Buyer will be a buyer in "good faith" within the meaning of 11 U.S.C. § 363(m), and, as such, is entitled to the protections afforded thereby.

12.     The terms and conditions of the sale transaction as provided for in the Agreement are fair and reasonable; entry into the Agreement on behalf of the Estate is a sound exercise of

the Trustee's reasonable business judgment; and, the sale transaction contemplated by the Agreement is in the best interests of creditors, interest holders and the Estate.

13.     The Trustee has asked the Court to waive the fourteen-day stay period provided by Rule 6004(h).  Based upon evidence submitted to the Court as to why the sale transaction should be closed prior to expiration of the fourteen-day stay period, the Court agrees that it is in the best interest of the creditors and the bankruptcy estate to conclude the sale as expeditiously as possible.  Accordingly, the Court makes a finding that it approves the waiver of Rule 6004(h).

14.     Appearances as set forth on the record have triggered the overbid procedures; the Trustee is allowed to use the Substitution of Buyer Clause to carry out an auction at his office. At the auction, all potential buyers who appeared at the Hearing, as well as the Purchaser, had full and fair opportunity to overbid. The highest and best offer was selected and will be reflected in the Trustee's report of sale for this Property.

15.     Based on the record in this case, the findings of fact and conclusions of law set forth above and stated on the record pursuant to Bankruptcy Rules 9014 and 7052, and good cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.     The Motion is granted as set forth herein.

**IT IS FURTHER ORDERED THAT:**

B.     The terms, conditions, and transactions contemplated by the Agreement are hereby approved in all respects, and the Trustee is hereby authorized under 11 U.S.C §§ 105(a); 363(b) or (c); and 363 (f) and (m) to sell the Property free and clear of those liens, claims, encumbrances and interests set forth below to the Buyer on the terms and conditions provided in the Agreement and Motion. The Court approves—in its entirety—the Trustee's Motion to Sell Assets of the Estate Free and Clear of Liens and Encumbrances, as well as Trustee's Substitution of Buyer provision, which allows the Trustee to assign the Buyer's purchase rights under the RPA to a substitute buyer ("Substitute Buyer").  The Substitute Buyer may then exercise those purchase rights and, like a back-up bidder, close escrow on the Property without the need for the Trustee to seek Court approval for what is substantially the same sale.

C.     The Trustee is hereby authorized, empowered, and directed to (1) perform under, consummate, and implement the Agreement, (2) execute all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the

transactions contemplated thereby, (3) take all further actions as may be necessary or appropriate for the purposes of assigning, transferring, granting, conveying, encumbering or transferring the Debtor's property as contemplated by the Agreement, and (4) take such other and further steps as are contemplated by the Agreement or reasonably required to fulfill the Trustee's obligations under the Agreement, all without further order of the Court. The Trustee is hereby authorized to execute all documents in connection with the sale transaction approved hereby;

D.      The sale of the Property shall be free and clear of all ownership interests and all predecessors and successors in interest; any unrecorded equitable or legal interests in the Property asserted by any person or entity, or their respective predecessors and successors in interest, unless such interests would be superior to the rights of the Trustee under 11 U.S.C. § 544(a)(3); the claims or interests asserted by any person or entity, or their respective predecessors and successors in interest, against the Estate which do not constitute liens against or interests in the Property; and the claims or interests asserted by any person or entity, or their respective predecessors and successors in interest, evidenced by the liens, encumbrances and interests of record set forth in Exhibit "A"(including, without limitation, those listed in ¶7);

E.      Except as authorized for payment hereby, each lien, encumbrance or interest identified above shall attach, as adequate protection to the holder thereof pursuant to 11 U.S.C. § 363(e), to the net proceeds of sale ("Proceeds"), after (i) payment of all costs of sale, and (ii) satisfaction of those liens and encumbrances authorized for payment hereby, with the same extent, validity and priority, if any, as such lien, encumbrance, or interest now has with respect to the Property, subject to any and all defenses, offsets, counterclaims and/or other rights of any party relating thereto;

F.      The Trustee is hereby authorized to pay directly from the escrow all amounts due which are provided for in the Agreement;

G.      The Trustee is hereby authorized to pay all other reasonable and customary escrow fees, recording fees, title insurance premiums, and closing costs necessary and proper to conclude the sale of the Property;

H.      At the close of escrow of the sale approved by this Order, the Trustee is authorized to pay from the sale proceeds a broker's commission in an amount equal to 5% of the purchase price;

I.     The Court authorizes the escrow agent, at the closing, to disburse all remaining Proceeds to the Trustee (or, if the Trustee expressly directs the agent otherwise, some or all of the Proceeds may be disbursed to other parties).  Proceeds disbursed to the Trustee may require an order by the Court directing the Trustee to distribute the Proceeds ("Order on Proceeds");

J.     This Court shall and hereby does retain jurisdiction to (1) enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and any other supplemental documents or agreements executed in connection therewith; (2) compel delivery and payment of the consideration provided for under the Agreement; (3) resolve any disputes, controversies or claims arising out of or relating to the Agreement; and (4) interpret, implement, and enforce the provisions of this Order;

K.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective immediately.  The Court has agreed to waive the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure and has provided that the order is effective immediately upon entry;

L.     The Court finds that adequate notice of the sale has, under the particular circumstances of the case, been given.  The Court believes that such notice was sufficient to allow any interested parties the opportunity weigh in on the Motion and participate in the sale hearing;

M.     Following entry of this Order, either: (a) a secured party in interest may demonstrate to the Trustee that said lienholder has a valid claim to the Proceeds; or (b) the Trustee may file an adversary complaint to determine the priority, extent, validity, and existence of liens against the Proceeds;

N.     The Court approves the Buyer's Premium of 5% of the Final Price;

O.     Pursuant to 11 U.S.C. § 363(m), absent a stay of this Order pending appeal, the reversal or modification on appeal of this Order, or any provision thereof, shall not affect the validity of the sale transaction approved hereby which is consummated prior to such stay, reversal or modification on appeal; and

P.     The validity of the sale approved hereby shall not be affected by the appointment of a trustee or successor trustee, the dismissal of the above-captioned case, or its conversion to another chapter under title 11 of the United States Code.

**IT IS SO ORDERED.**

Date: October 3, 2013                           Respectfully Submitted by:

                                                /s/ David A. Rosenberg
                                                DAVID A. ROSENBERG
                                                **U.S. BANKRUPTCY TRUSTEE**

**ALTERNATIVE METHOD RE: RULE 9021**

_____    The Court has waived the requirement of approval under LR 9021(b)(1).

_X_      No Parties appeared or filed written objections.

_____    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved this order, or failed to respond, as indicated below:

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant LR 9014(g), and that no party has objected to the form or content of the order.

# EXHIBIT A

# stewart title

Stewart Title Company
376 E. Warm Springs Road, Suite 190
Las Vegas, NV 89119
Phone (702) 697-3700
Fax (866) 652-5315

Updated  1st
## PRELIMINARY REPORT

| | | | |
|---|---|---|---|
| **Our Order No.:** | 01415-2527 | **Sales Price:** | **$125,000.00** |

**Proposed
Buyer/Borrower:**  TBD

**Seller:**  David A. Rosenberg, BK TTEE for the Estate of
Dennis A. Gazso and Shelle K. LeFever,
debtors, Case # 12-12224-lbr

**Property Address:**  2513 Sierra Sage Street, Las Vegas, NV 89134

**Proposed Lender:**  Lender

Today's Date:  October 02, 2013

In response to the above referenced application for a policy of title insurance, Stewart Title Guaranty Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage of said Policy or Policies are set forth in Exhibit A attached.  Copies of the Policy forms should be read.  They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Brant Remaley, Title Officer

Dated as of September 24, 2013 at 7:30 a.m.

**When replying, please contact:**

Sharon Haze
(702) 316-5808  Fax:  (866) 652-5315

Order Number:  01415-2527

# PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☒ 2006 ALTA Owner's Policy - Standard

☐ 2006 ALTA Owner's Policy - Extended

☐ 1998 ALTA Homeowners Plus Insurance Policy

☐ ALTA Short Form Residential Loan Policy 2006

☐ 2006 ALTA Loan Policy - Standard

☐ 2006 ALTA Loan Policy - Extended

☐ Preliminary Report Only

☐

☐

# SCHEDULE A

The estate or interest in the land hereinafter described or referred to covered by this report is:

a Fee

Title to said estate or interest at the date hereof is vested in:

Dennis A. Gazso and Shelle K. LeFever, husband and wife as joint tenants, subject to proceedings pending in the Bankruptcy Court of the U.S. District Court, Nevada District entitled:

In Re: Dennis A Gazso and Shelle K Lefever, Debtors, Case No. 12-12224-lbr, wherein a petition for relief was filed on the date of February 29, 2012.

## LEGAL DESCRIPTION

The land referred to herein is situated in the State of Nevada, County of Clark, described as follows:

Lot 313 in Block 10 of SUN CITY LAS VEGAS – UNIT 44, as shown by map thereof on file in Book 62 of Plats, Page 99, in the Office of the County Recorder of Clark County, Nevada.

Order Number:  01415-2527

## SCHEDULE B

At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:

1. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. (a)  Unpatented mining claims, (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water; whether or not the matters excepted under (a), (b) or (c) are shown by the public records, (d) Indian tribal codes or regulations, Indian Treaty or Aboriginal Rights, including easements or equitable servitudes.

3. Minerals of whatsoever kind, subsurface and surface substances, including but not limited to coal, lignite, oil, gas, uranium, clay, rock, sand and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether or not appearing in the Public Records or listed in Schedule B. The Company makes no representation as to the present ownership of any such interests.  There may be leases, grants, exceptions or reservations of interests that are not listed.

4. State, County and City Taxes for the fiscal period 2013 to 2014, a lien now due and payable in the total amount of $1154.40
   PARCEL N O.: 137-14-810-068  TAX DISTRICT:  206 LOCATION:  Las Vegas
   1st installment of  $288.60 PAID.
   2nd installment of $288.60 unpaid, delinquent 1st Monday in October.
   3rd installment of  $288.60 unpaid, delinquent 1st Monday in January.
   4th installment of  $288.60 unpaid, delinquent 1st Monday in March.

5. The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 361.260 of the NEVADA REVISED STATUTES.

6. The herein described property lies within the boundaries of the City of Las Vegas and is subject to any and all fees that may be due said City.

7. Any Special Assessments which may be due and payable that are not assessed through the Clark County Treasurers Office and are being billed by the entity where the parcel is located.

8. PATENT:  Mineral rights, reservations, easements and exclusions in the patent from the United States of America recorded September 15, 1955 in Book 67 as Document No. 56941, of Official Records.

9. DECLARATION OF RESTRICTIONS:  Covenants, Conditions and Restrictions (but deleting restrictions, if any, based upon race, color, religion, sex, handicap, familial status, or national origin) unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons as contained in a Declaration of Restrictions recorded  January 9, 1989, in Book 890109, as Document No. 0220, of Official Records.

   MODIFICATION:  Said covenants, conditions and restrictions were modified by an instrument recorded August 21, 1991, in Book 910821, as Document No. 00857, of Official Records.

   MODIFICATION:  Said covenants, conditions and restrictions were modified by an instrument recorded March 10, 1994, in Book 940310, as Document No. 01042, of Official Records.

   MODIFICATION:  Said covenants, conditions and restrictions were modified by an instrument

recorded April 5, 1994, in Book 940405, as Document No. 00945, of Official Records.

MODIFICATION: Said covenants, conditions and restrictions were modified by an instrument recorded March 10, 2009, in Book 20090310, as Document No. 03599, of Official Records.

RIGHT TO LEVY ASSESSMENTS: The right to levy certain charges or assessment against said land which shall become a lien if not paid as set forth in the above Declaration of Restrictions is conferred upon **the Sun City Summerlin Community Association**.

10. DECLARATION OF RESTRICTIONS: Covenants, Conditions and Restrictions (but deleting restrictions, if any, based upon race, color, religion, sex, handicap, familial status, or national origin) unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons as contained in a Declaration of Restrictions recorded July 19, 1991, in Book 910719, as Document No. 00619, of Official Records.

11. DECLARATION OF RESTRICTIONS: Covenants, Conditions and Restrictions (but deleting restrictions, if any, based upon race, color, religion, sex, handicap, familial status, or national origin) unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons as contained in a Declaration of Restrictions recorded October 7, 1993, in Book 931007, as Document No. 00933, of Official Records.

RIGHT TO LEVY ASSESSMENTS: The right to levy certain charges or assessment against said land which shall become a lien if not paid as set forth in the above Declaration of Restrictions is conferred upon **the Sun City Summerlin Community Association**.

12. EASEMENTS AND DEDICATIONS as indicated or delineated on the plat of said subdivision on file in Book 62 of Plats, Page 99, Official Records. (See map for full particulars.)

13. DECLARATION OF RESTRICTIONS: Covenants, Conditions and Restrictions (but deleting restrictions, if any, based upon race, color, religion, sex, handicap, familial status, or national origin) unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons as contained in a Declaration of Restrictions recorded October 13, 1994, in Book 941013, as Document No. 00736, of Official Records.

14. DEED OF TRUST: A Deed of Trust to secure an indebtedness of the amount stated herein, and any other amounts payable under the terms thereof.
Dated                              : December 19, 2006
Amount                          : $175,920.00
Trustor                          : Dennis A. Gazso and Shelle K Lefever
Trustee                          : Fidelity National Title
Beneficiary                    : Mortgage Electronic Registration Systems Inc., acting solely as nominee for Lehman Brothers Bank, FSB, a federal savings bank
Recorded                       : December 22, 2006
Book                             : 20061222
Document No.                : 0004369, of Official Records.

ASSIGNMENT: The Beneficial interest of record under said Deed of Trust was assigned
To                                 : Aurora Bank FSB
Recorded                       : November 14, 2011
Document No.                : 201111140003529, of Official Records.

ASSIGNMENT: The Beneficial interest of record under said Deed of Trust was assigned
To                                 : Nationstar Mortgage LLC.
Recorded                       : February 22, 2013
Document No.                : 201302220000996, of Official Records.

SUBSTITUTION OF TRUSTEE:  An instrument substitutes the Trustee of said Deed of Trust
New Trustee            : QUALITY LOAN SERVICE CORPORATION
Dated                     : February 22, 2013
Recorded              : February 26, 2013
Document No.        : 201302260002257, of Official Records

ASSIGNMENT:  The Beneficial interest of record under said Deed of Trust was assigned
To                          : Nationstar Mortgage, LLC
Recorded              : June 19, 2013
Document No.        : 201306190001945, of Official Records.

15. The rights and interest of parties in possession of the premises described herein under any unrecorded leases and/or agreements, the terms and conditions of which are unknown.

16. REQUIREMENT - In order to insure a transfer of title of the property described in Schedule A herein, this Company will require the following from the Bankrupt Debtor or Trustee named below:

**David A. Rosenberg**

A.  A certified Copy of a filed final non-appealable Order from the Bankruptcy Court authorizing the sale of said land.

Subject to proceedings pending in the Bankruptcy Court of the U.S. District Court, Nevada District entitled:

In Re: Dennis A Gazso and Shelle K Lefever, Debtors, Case No. 12-12224-lbr, wherein a petition for relief was filed on the date of February 29, 2012.

**END OF EXCEPTIONS**

Order Number: 01415-2527

# REQUIREMENTS AND NOTES

1.  Show that restrictions or restrictive covenants have not been violated.

2.  Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be issued.

3.  Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.

4.  Pay the premiums, fees and charges for the policy.

5.  Pay all taxes, charges, and assessments affecting the land that are due and payable.

6.  Documents satisfactory to us creating the interest in the land and the mortgage to be insured must be signed delivered and recorded.

7.  Tell us in writing the name of any one not referred to in this Prelim who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

8.  Record instrument(s) conveying or encumbering the estate or interest to be insured, briefly described:

    **Documents necessary to close the within transaction**

9.  After the review of all the required documents, the Company reserves the right to add additional items and/or make additional requirements prior to the issuances of any policy of title insurance.

10. REQUIREMENT – BUYER(S) NAME(S): Additional requirements may be made when the Company is provided with **COMPLETE** Name and Status of Proposed Buyer/Lender**.**

11. The Company is not aware of any matters which would cause it to decline to attach an ALTA 9 (Restrictions, Encroachments, Minerals Endorsement) and an ALTA 22 (Location Endorsement), indicating that there is located on said land a Townhouse known as  2513 Sierra Sage St, Las Vegas, NV, to an extended coverage policy.

**END OF REQUIREMENTS AND NOTES**

**CLTA Preliminary Report Form Exhibit A (06-03-11)**

# CALIFORNIA LAND TITLE ASSOCIATION

## STANDARD COVERAGE POLICY – 1990
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02-03-10)
## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

a. building;
b. zoning;
c. land use;
d. improvements on the Land;
e. land division;
f. environmental protection.

This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.   The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.   Risks:
a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
c. that result in no loss to You; or
d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.   Failure to pay value for Your Title.

6.   Lack of a right:
a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b. in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal  bankruptcy.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*         For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible  Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $5,000.00 |

## ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
## EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of any law or government regulation.  This includes building and zoning ordinances and also laws and regulations concerning:

- land use

- improvements on the land

- land division

- environmental protection

This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

2.   The right to take the land by condemning it, unless:

- a notice of exercising the right appears in the public records

- on the Policy Date

- the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking

3.   Title Risks:

- that are created, allowed, or agreed to by you

- that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records

- that result in no loss to you

- that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4.   Failure to pay value for your title.

5.   Lack of a right:
- to any land outside the area specifically described and referred to in Item 3 of Schedule A

OR
- in streets, alleys, or waterways that touch you land

This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  (a) taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    (b) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## 2006 ALTA OWNER'S POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1.  a.  Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions or location of any improvement now or hereafter erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
    b.  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  created, suffered, assumed or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting In no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

## STG Privacy Notice 1 (Rev 01/26/09) Stewart Title Companies

### WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title  Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** | Yes | No |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

### Sharing practices

| | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br><br>• request insurance-related services<br>• provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

| **Contact Us** | If you have any questions about this privacy notice, please contact us at: Stewart Title Guaranty Company, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056 |
|---|---|